Plaintiff instituted this suit for compensation for and during disability not to exceed 400 weeks. He claims to be totally and permanently disabled for performance of any work which he is capable to perform.
Plaintiff's employer owned and operated a combination garage, blacksmith and welding shop where plaintiff was employed at the time of the alleged accident which caused his injuries. There is no dispute about the business of his employer being a hazardous one under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, as amended), or over the rate of pay plaintiff was receiving at the time of the alleged accident. Plaintiff's employer and his compensation insurance carrier were made defendants.
The principal defenses made of plaintiff's claim are that the accident alleged upon did not occur and if it did occur, it did not cause the injuries complained of by plaintiff and that if he was injured when and as alleged, he is fully recovered and has been paid all compensation to which he was entitled under the law.
The lower court awarded judgment for plaintiff as prayed for and on a rule filed by plaintiff fixed the expert witnesses' fee of the doctors used as witnesses by plaintiff. Defendants are now prosecuting this appeal from that judgment.
The facts of this case, as we find them from a study of the record, are that on August 31, 1940, while in the employ of E.K. Flournoy, one of the defendants herein, plaintiff received through accident arising out of and in the scope of his employment a right inguinal hernia and that thereafter, on the recommendation of the doctor representing the compensation insurer of Flournoy, the other defendant herein, an operation was performed for the correction of said hernia on or about September 14, 1940. Plaintiff was paid compensation for the period between August 31, 1940 and December 2, 1940. On or about the latter date plaintiff was discharged by the physician as being well and returned to *Page 85 
his former job with Flournoy. Defendants paid all hospital and medical bills from the date of the accident until plaintiff returned to work.
Plaintiff worked regularly from December 6, 1940 until May 21, 1941, but not without difficulty. He continually suffered a stinging or burning sensation in the region of the operative scar. We are convinced the operation was not entirely a successful one although it relieved plaintiff's condition sufficiently for him to perform his regular duties with discomfort and, while performing his duties on the morning of May 21, 1941 and in attempting to remove a dual wheel from a truck, the wheel suddenly slipped off causing him to fall backwards against the ground. The same sensation and pain caused by the accident of August 31, 1940 was immediately felt by the plaintiff and he became sick and vomited. He immediately informed his superior on the job and was taken to his home by a friend who was passing by. Plaintiff's employer was informed of the accident and plaintiff was again placed under the care of the physician for the compensation insurer. He was hospitalized and treated by this doctor for a time. After being allowed to return to his home, plaintiff's condition did not improve and he was returned to the hospital for a second time where he remained for several days. He was provided with a medical belt and suspensory. Plaintiff was under the care of this doctor until September 10, 1941 and was paid compensation from June 4, 1941 until September 10, 1941, when the physician again discharged him as being well.
It is clear to our minds that plaintiff was not a well man when he was discharged by the doctor and the compensation payments stopped, but he in fact was totally disabled to perform any kind of work at the time and was in the same condition at the time of the trial below. While plaintiff was of the opinion there had been a recurrence of the hernia, we do not think the testimony shows that to be a fact. It is clear that the operation for hernia was not entirely successful and that plaintiff was left in a condition which caused him much discomfort and suffering and that condition was aggravated by the second accident to such an extent as to totally disable him.
We are convinced the judgment of the lower court awarding plaintiff compensation for total and permanent disability is correct and that a detailed discussion of the testimony given by the various witnesses would be useless and of no help to anyone.
Defendants complain of the amount fixed by the court as expert witnesses' fees for the doctors testifying for plaintiff. The fees were fixed on a rule where issue was joined but no evidence was taken. The only evidence found on the question is in the record of the case on its merits where it is shown that Dr. Mosely was on the witness stand approximately forty minutes; Dr. Hill approximately one hour and Dr. Cummings about forty-five minutes.
The lower court allowed Dr. Mosely $50 and the other two doctors $25 each and taxed same as costs in the case. Dr. Mosely testified he spent several hours studying authorities to bolster his finding on the examination of plaintiff in order that he might be prepared to substantiate his finding in court. We do not think defendants should be forced to pay for the time spent by Dr. Mosely in his study. He was called as an expert witness to give testimony regarding his findings after examining plaintiff. He was not required to do any more than that. Any studying he might have done to qualify himself as an expert cannot be charged to defendants. All the physicians live in the city where the case was tried and were called to the court room by telephone when needed. They were not required to remain in the court room during the entire trial and we are convinced that a fee of $25 each is just and fair.
It therefore follows that the judgment of the lower court in the case on its merits is correct and is affirmed and that part of the judgment fixing the expert witness fee of Dr. Mosely at $50 is amended by reducing it to $25; and in all other respects the judgment of the lower court is affirmed with costs. *Page 86